**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:                                                 Case No. 10-74189

METALS IN TIME, INC.                    In proceedings under
                                                         Chapter 11

                          Debtor                    Hon.  Marci B. McIvor

_____/

## COVER SHEET FOR MOTION TO OBTAIN CREDIT

The above-captioned debtor has filed a motion to obtain post-petition financing, which is attached to this Cover Sheet.  In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

{00284436}

| | | |
|---|---|---|
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | __X___ Yes<br><br>_____ No | See Exhibit B<br>Page 1, ¶ 7(b) |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>__X___ No | Page _____, ¶ _____ |

{00284436}

| | | |
|---|---|---|
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__X__ No | Page ___, ¶ ___ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>__X__ No | Page ___, ¶ ___ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__X__ No | Page ___, ¶ ___ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__X__ No | Page ___, ¶ ___ |
| (16) Provisions that purport to bind a subsequent trustee. | __X__ Yes<br><br>_____ No | Page 4, ¶ 9 |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>__X__ No | Page ___, ¶ ___ |

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
MICHAEL E. BAUM (P29446)
JOHN J. STOCKDALE, JR. (P71561)
Attorneys for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

Dated: November 12, 2010

{00284436}

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 10-74189

METALS IN TIME, INC.                            In proceedings under
                                                Chapter 11

        Debtor                    Hon. Marci B. McIvor

_____/

## FIRST DAY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING POST-PETITION SECURED FINANCING PURSUANT TO SECTION 105, 361, 362, 364(C)(1), 364(C)(2) , 364(C)(3), 364(E) AND 503(B) OF THE BANKRUPTCY CODE

Metals in Time, Inc. (the "Debtor"), by its proposed counsel, Schafer and Weiner, PLLC, for its First Day Motion for Interim and Final Orders Authorizing Post-Petition Financing Pursuant to Section 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 503(b) of the Bankruptcy Code (the "Financing Motion"), states as follows:

### CONCISE STATEMENT FOR RELIEF REQUESTED

1.    By this Financing Motion, the Debtor seeks entry of interim and final orders authorizing the Debtor to obtain post petition financing pursuant to the DIP Facility, (ii) granting the DIP Lender security interests in and liens on the DIP Collateral, (iii) authorizing the Debtor to use the proceeds of the DIP Facility, and (vi) scheduling a Final Hearing on this Motion and establishing notice procedures in respect thereof.

2.    The salient terms of the DIP Loan are as follows:[1]

---

[1] This summary is based on a term sheet, attached as Exhibit B. The Debtor and DIP Lender are finalizing negotiation and documentation of the DIP Loan, and will file the same as soon as it is available, and supplement this Financing Motion and provide any information required by Bankruptcy Rule 4001(C)(1)(B) not provided herein. Further, this summary is qualified in its entirety by reference to the provisions of the DIP Loan and the Interim Order and the Final Order. The DIP Loan will control in the event of any inconsistency between this Motion and the DIP Loan.

{00284265}                          1

| Borrower: | Metals in Time, Inc. (the "Debtor"). |
|---|---|
| DIP Lender: | Georgio Conti, Inc. ("DIP Lender"). |
| Amount of DIP Loan: | Up to $450,000 (the "DIP Loan"). |
| Use of DIP Loan Proceeds: | A revolving loan to fund operating costs and reorganization expenses. |
| Application of Proceeds: | In addition to payments of interest, fees and costs required by the DIP Financing Agreement, Debtor is only permitted to make payments, consistent with a Budget, approved by First Place Bank (the "Senior Secured Lender") for administrative expenses and payment of certain secured, priority and/or critical debts as may be permitted by Court order. |
| Maturity Date: | Six months from the date of entry of the order approving the relief requested in this Financing Motion. |
| Interest Rate | 6% per annum |
| Priority and Liens for DIP Lender: | Subject to pre-existing liens, a superpriority administrative claim status pursuant to 11 U.S.C. §§ 364(c)(1), 503(b) and 507(b), and secured by a perfected security interest pursuant to 11 U.S.C. §§ 364(c)(2) and (c)(3) in the DIP Collateral (the "DIP Lender Claim"). |
| Events of Default: | The DIP Facility contains usual and customary events of default for facilities of this type. |
| Waiver of Perfection Requirements | Interim and Final Order provide for automatic perfection of DIP Lender's liens in DIP Collateral. |

## JURISDICTION AND GENERAL ALLEGATIONS

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

5.     Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

6.     On November 9, 2010 (the "Petition Date"), the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code (the "Code").

7.     The Debtor is currently operating as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Code.  Serouj Basmajian ("Mr. Basmajian") is the responsible person for the debtor-in-possession.

8.     No official committee of creditors holding unsecured claims has been appointed in this case.

## BACKGROUND

9.     The Debtor was established and began operations in 1998 and has operated a high-end retail jewelry business located in Royal Oak, Michigan since that time.  *See* Declaration of Serouj Basmajian in Support of Debtor's Chapter 11 Petition and First Day Pleadings [Docket No. 12, filed November 11, 2010] (the "Basmajian Declaration").

10.     In addition, Debtor provides jewelry and watch repair service to its many retail customers.  At any one time, the Debtor has jewelry and time pieces in its store for repairs that are the property of its retail customers.  See Basmajian Declaration.

11.     The Debtor generates nearly 50-percent of its sales during November through January of each year (the "Holiday Season").

12.     The majority of the Debtor's value arises from its ongoing operations, and its ability to continue selling jewelry and related services to its retail customers.  See Basmajian Declaration.  Without the ability to meet its customers' demands for high-quality inventory, the Debtor's customers would likely seek alternative sources resulting in a great loss of business just prior to the Holiday Season.

13.     In order to obtain sufficient inventory for the Holiday Season, to maintain its working capital, and satisfy its reorganization costs, the Debtor requires additional post-petition financing.

14.     The Debtor has indicated that $423,244 is necessary to avoid irreparable harm to the Debtor.  *See* Basmajian Declaration.  The Debtor will only use the DIP Loan to the extent such funds are not otherwise available from Cash Collateral.

15.     Despite good faith efforts, the Debtor is unable to obtain (i) adequate unsecured credit allowable under 11 U.S.C. §§ 503(b)(1) or 364(c)(1) as an ordinary administrative expense, (ii) unsecured credit allowable under 11 U.S.C. §§ 364(a) or (b), or (iii) secured credit under 11 U.S.C. § 364(c)(1) from any source sufficient to enable Debtor to continue its business operations.  Therefore, Debtor has requested that DIP Lender, its single largest unsecured creditor, provide the post-petition financing set forth in the DIP Financing Agreement and the Interim Order.

16.     The Debtor is also unable to obtain financing without (i) granting the DIP Lender's claims priority over administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507(b) in accordance with 11 U.S.C. § 364(c)(1) of the Code, (ii) securing the post-petition obligation and indebtedness of Debtor to DIP Lender (the "Post-petition Indebtedness") with liens on all Debtor  post-petition assets in accordance with 11 U.S.C. § 364(c)(2), and (iii) securing the Post-petition Indebtedness with junior liens on Debtor prepetition assets in accordance with 11 U.S.C. §364(c)(3).

17.     DIP Lender is willing to provide Debtor with post-petition financing pursuant to the terms of the Interim Order.  The proposed DIP Loan (defined below) is in the best interests of Debtor and all other parties in interest.

18.     In summary, the DIP Lender's financing under the Interim Order will consist of the following: a short-term, revolving loan, bearing 6-percent interest per annum in an amount not to exceed $450,000.00 at any time.

19.     The Debtor and DIP Lender have exchanged fair consideration for the rights each obtain in the Interim Order and each acted in good faith in their negotiations over the terms of the Interim Order.

20.     The terms and conditions of the Interim Order are: (i) fair and reasonable; (ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; (iii) supported by reasonably equivalent value and fair consideration; (iv) the parties negotiated and entered into by the parties in good faith; and (v) the best available to Debtor under current market conditions and financial circumstances of Debtor. DIP Lender's extensions of credit to Debtor under the Interim Order are and will be made in good faith. Any credit extended to the Debtor by the DIP Lender pursuant to the Interim Order or the Final Order will be deemed to have been extended and made in good faith, as that term is used in 11 U.S.C. § 364(e).

## DEBTOR'S DECISION TO ENTER INTO THE DIP LOAN

21.     Before determining to enter into the DIP Loan, the Debtor had several conversations with its suppliers regarding the provision of products and services post-petition. Debtor's creditors generally agreed to continue providing such goods and services as Debtor required on a cash-on-delivery basis. However, the DIP Lender agreed to provide financing for such goods and service as Debtor required on a secured basis.

22.     The DIP Lender is owned by Mr. Basmajian's father.

23.     The Debtor with the assistance of its proposed Financial Advisor, Kaszubski, Al-Hassan, Sadaps CPA & Associates, P.C., conducted vigorous with the DIP Lender to arrive at the

terms of the DIP Loan, which are more favorable that the terms under the Debtor's loans from the Senior Secured Lender.

24. In deciding to seek financing from the DIP Lender, the Debtor considered many factors. First, the DIP Lender already held large unsecured position with the Debtor as well as provided certain goods to the Debtor on a consignment basis. Second, the DIP Lender's preexisting knowledge of the Debtor's business allowed the DIP lender to act decisively with regard to the DIP Loan. Third, The DIP Lenders' preeminent position in the industry, which may provide additional comfort to the Debtor's unsecured creditors, which may ease credit restrictions imposed by other unsecured creditors. Fourth, the Holiday Season is quickly upon the Debtor, making the need for goods and services imperative to a successful reorganization. Fifth, the proposed interest rate is six-percent, which is lower than the interest rate paid on the Debtor's obligations to the Senior Secured Lender.

25. The Debtor, therefore, decided, in the exercise of it sound business judgment, that the proposal for the DIP Loan provided by the DIP Lender was the most favorable under the circumstances and addressed the Debtor's Holiday Season financing needs.

26. Entry into the DIP Loan will give the Debtor the ability to obtain the necessary inventory throughout the Holiday Season and will allow the Debtor valuable additional time to pursue their restructuring options while maintaining the going concern value of its business. Thus, the Debtor determined that entry into the DIP Loan was in the best interests of its estate, creditors and other parties in interest.

## APPLICABLE AUTHORITY

27. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under 11 U.S.C. § 503(b)(1), then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt (a) with priority over any or all administrative expenses

of the kind specified in 11 U.S.C. § 503(b) or § 507(b); or (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien. *See* 11 U.S.C. § 364(c).

28.     Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2). As set forth below, the Debtor's request for post-petition financing should be approved.

## THE DIP LOAN SHOULD BE APPROVED

29.     In order to approve a Debtor request for post-petition credit under 11 U.S.C. § 364(c) this Court must find that Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense." *See* In re Garland Corp., 6 B.R. 456, 461 (1st Cir. BAP 1980) (secured credit under 11 U.S.C. § 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking unsecured credit under 11 U.S.C. § 364(c) must prove that it was unable to obtain unsecured credit pursuant to 11 U.S.C. § 364(b)); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under 11 U.S.C. §§ 364(a) and (b)).

30.     As set forth in the Basmajian Declaration, and as the evidence at the Final Hearing will demonstrate, the Debtor could not have obtained post-petition financing on the terms and of the type and magnitude required in this bankruptcy case on an unsecured basis, or,

indeed, without offering terms more onerous than those for which approval is sought herein. Moreover, a potential lender's ability to close the loan in a short amount of time and to thereby quickly provide the Debtor financing necessary for the Holiday Season was also a significant consideration for the Debtor. The Debtor could not have obtained post-petition financing quickly enough from any other third parties, therefore, after carefully evaluating the foregoing factors, the Debtor determined to move forward with the post-petition financing proposed by the DIP Lender.

31.  The Debtor negotiated the DIP Loan with the DIP Lender in good faith and pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g.,* Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); In re Ames Department Stores, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

32.  To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by 11 U.S.C. § 364(c) or § 364(d). Bray v. Shenandoah Federal Savings & Loan Assn. (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding

that such credit is unavailable." Id.; *see also* Ames, 115 B.R. at 40 (holding that the debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders).

33.    The Debtor's efforts to obtain necessary post-petition financing from its secured lender and its unsecured creditors satisfy the statutory requirements of 11 U.S.C. § 364(c). *See, e.g.*, Ames, 115 B.R. at 40 (approving section 364(c) financing Loan and holding that the debtor made reasonable efforts to obtain less onerous terms where it approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders); In re 495 Cent., Park Ave. Corp., 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992) (debtor "must make an effort to obtain credit without priming a senior lien").

34.    The terms and conditions of the DIP Loan are fair and reasonable and were negotiated by the parties in good faith. Accordingly, the DIP Lender should be accorded the benefits of 11 U.S.C. § 364(e) in respect of the DIP Loan.

35.    Based upon the foregoing, and for the additional reasons set forth below, the Debtor respectfully request that the Court approve the DIP Loan in accordance with the terms set forth in the Interim Order, attached hereto as Exhibit A, and the DIP Loan.

## INTERIM APPROVAL OF THE DIP LOAN SHOULD BE GRANTED

36:    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to 11 U.S.C. § 363 and to obtain credit under 11 U.S.C. § 364 may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable to the debtor's estate.

37.     The Debtor request that the Court schedule and conduct a preliminary hearing on the Motion and authorize the Debtor from and after the entry of the Interim Order until the Final Hearing to obtain credit under the terms contained in the DIP Loan. The interim availability allowed pursuant to the terms of the DIP Loan will avoid Debtors' operations pending the Final Hearing.

38.     Accordingly, based upon the foregoing, the Debtor respectfully request that the Court grant interim approval of the DIP Loan in accordance with the terms set forth in the Interim Order and DIP Loan.

## ESTABLISHING NOTICE PROCEDURES AND SCHEDULING FINAL HEARING

39.     Notice of this Motion will be given to (a) the United States Trustee for the Eastern District of Michigan, (b) identified secured creditor, (c) the Debtor' top twenty (20) unsecured creditors, (d) counsel to the DIP Lender, and (e) counsel to Senior Secured Creditor. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

40.     The Debtor further respectfully request that the Court schedule the Final Hearing and authorize them to serve copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to (i) the United States Trustee for the Eastern District of Michigan; (ii) counsel for official committee(s), if any; (iii) secured creditors or their counsel; (iv) counsel to the proposed DIP Loan; (v) the parties included on the Debtor list of twenty (20) largest unsecured creditors; and (vi) any party that has filed, prior to such date, a request for notices with this Court. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

41.     No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE,** the Debtor respectfully request that the Court enter an order, substantially in the form attached as Exhibit A, granting the relief requested in this Motion and granting such further relief as the Court deems appropriate.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
MICHAEL E. BAUM (P29446)
JOHN J. STOCKDALE, JR. (P71561)
Attorneys for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

Dated: November 12, 2010

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 10-74189

METALS IN TIME, INC.                            In proceedings under
                                                Chapter 11

                    Debtor                      Hon. Marci B. McIvor

_____/

## INTERIM ORDER AUTHORIZING POST-PETITION
## SECURED FINANCING PURSUANT TO SECTION 105, 361, 362, 364(C)(1),
## 364(C)(2) , 364(C)(3), 364(E) AND 503(B) OF THE BANKRUPTCY CODE

Upon the Motion of Metals In Time, Inc. ("Debtor") for an interim order and final order
(a) authorizing the Debtor to obtain post-petition financing pursuant to sections 105, 361, 362,
364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 503(b) of title 11 of the United States Code (the
"Bankruptcy Code") and Rules 2002 and 4001(c) of the Federal Rules of Bankruptcy Procedure
upon the terms and conditions set forth in this Order and the DIP Financing Agreement attached
as Exhibit A hereto and incorporated herein by reference[1] and (b) scheduling a hearing (the
"Final Hearing") to consider entry of a final order (the "Final Order") with respect thereto; due
and sufficient notice of the Financing Motion and the preliminary hearing thereon (the
"Preliminary Hearing") having been given under the circumstance; the Preliminary Hearing on
the Motion having been held on November 16, 2010; and upon the entire record made at the
Preliminary Hearing; and the Court having found good and sufficient cause appearing therefor;

The Court hereby makes the following FINDINGS:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the
Agreement.

{00284290}                                      1

A. On November 9, 2010 (the "Petition Date") the Debtor filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code §101 et. seq. (the "Code").

B. Since the Petition Date, the Debtor has remained in possession of its assets and is authorized to operate and manage its businesses as a debtor-in-possession under §§1107 and 1108 of the Code.

C. No committee(s) of creditors holding unsecured claims or other committees have been appointed as provided by §1102 of the Code in any of this case.

D. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

E. The Debtor is unable to obtain unsecured credit or secured financing on terms more favorable than those described herein.

F. Georgio Conti, Inc. ("DIP Lender") has agreed to provide the DIP Loans and DIP Financing to the Debtor in accordance with the terms of the DIP Financing Agreement.

G. Notice of the Preliminary Hearing and the relief requested in the Financing Motion has been given to (i) the Office of the United States Trustee, (ii) known holders of pre-petition liens against the Debtor's' property, (iii) the Debtor's top twenty (20) unsecured creditors, and (iv) other parties in interest who have filed requests for notice in this Chapter 11 Case with the Court. This Preliminary Hearing is being held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

H. Based on the record presented to this Court by the Debtor, it appears that the DIP Financing has been negotiated in good faith between the Debtor and the DIP Lender, and any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to have

been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

I. Based on the record before this Court, it appears (and the Debtor and the DIP Lender have stipulated) that the terms of this Order, including, without limitation, that terms of the DIP Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties.

J. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c). The permission granted herein to enter into the DIP Financing is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interests of the Debtor's estate and its creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business during the Holiday Season.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. <u>Motion Granted</u>. The Motion is granted, subject to the term and conditions set forth in this Order and the DIP Financing Agreement.

2. <u>DIP Financing Agreement Approved</u>.  The DIP Financing Agreement is hereby approved in all respects.

3. <u>Authorization</u>.  Upon the terms and conditions set forth in the DIP Financing Agreement, and subject to the terms and conditions of this Order, the Debtor is expressly authorized and empowered to borrow money, and enter into and perform its obligations under

the DIP Financing Agreement. Notwithstanding the foregoing, the Debtor shall not borrow more than $423,244 prior to this Order becoming a final order absent further order of this Court.

4. <u>Security for Post-petition Indebtedness</u>. The DIP Lender is hereby granted as security for the repayment of all Post-petition Indebtedness, pursuant to §§ 364(c) of the Bankruptcy Code, a valid and perfected lien and security interest in the assets set forth in the DIP Financing Agreements.

5. <u>Perfection of New Liens</u>. All liens and security interests granted to the DIP Lender shall be, and hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection. The DIP Lender may (in its discretion) but shall not be required to, file a certified copy of the Agreement in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the DIP Lender's liens and security interests in the Debtor's assets.

6. <u>Priority Claims.</u> The Post-petition Indebtedness shall have the highest administrative priority under §364(c)(1) of the Bankruptcy Code, shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 case or any successor case), and shall, to the extent permitted by the Bankruptcy Code, at all times be senior to the rights of the Debtor, any successor trustee or estate representative in this Chapter 11 case or any successor case.

7.  <u>Subordinated DIP</u>.  Notwithstanding anything to the contrary herein, the liens granted to the DIP Lender pursuant to this Order shall be subordinate to the liens of the Senior Secured Lender and any other valid secured lender of the Debtor.

9.  <u>Binding on Successors</u>.  The provisions of this Order and the DIP Financing Agreement shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estate or of any estate in any successor case). Except as otherwise explicitly set forth in this Order or the Agreement, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order, the Agreement or the DIP Financing Agreement.

10.  <u>Effect of Dismissal or Conversion</u>.  If the Chapter 11 Case is dismissed, converted, otherwise superseded, the DIP Lender's rights and remedies under this Order and the DIP Financing Agreement shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded. Furthermore, notwithstanding any such dismissal, conversion, rescission, all of the terms and conditions of this Order and the DIP Financing Agreement, including, without limitation, the liens and the priorities granted hereunder and thereunder, shall remain in full force and effect, to the extent permitted by applicable law.

11.  <u>DIP Lender's Relationship with Debtor</u>.  In making decisions to advance any DIP Loan or DIP financing or other extensions of credit to the Debtor, in administering any DIP Loan or other extensions of credit, or in taking any other actions reasonably related to this Order or the Postpetition Indebtedness or the DIP Financing Agreement (including, without limitation, the exercise of their approval rights with respect to any budget), the DIP Lender shall have no

liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the DIP Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Lender and the Debtor.

12.   Effect of Modification. Except as permitted hereby, the Debtor shall not, without the DIP Lender's prior written consent, seek to modify, vacate or amend this Order or the DIP Financing Agreement. If any of the provisions of this Order or the DIP Financing Agreement are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of any Post-petition Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness.

13.   Safe Harbor. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the DIP Lender have agreed. Thus, each of such term and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

14.   Subsequent Hearing; Procedure for Objections and Entry of Final Order. The Motion is set for a Final Hearing before this Court at _____.m. on _____ (such

date or such later date to which the Final Hearing is adjourned or continued with the DIP Lender's prior consent, the "Final Hearing Date"), at which time any party in interest may present any timely filed objections to the entry of a Final Order. The Debtor shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by regular mail upon (i) the parties identified in finding paragraph E hereof, and (ii) any other party which theretofore has filed in the Chapter 11 case a request for special notice with this Court and served such request upon Debtors' counsel. The notice of the entry of this Order and the Final Hearing shall state that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Eastern District of Michigan no later than _____, which objections shall be served so that the same are received on or before 4:00 p.m. (Eastern time) of such date by (i) John Stockdale, Jr., Schafer and Weiner, PLLC, 40950 Woodward Ave., Ste. 100, Bloomfield Hills, MI 48304, counsel to the Debtor, (ii) Eric Bryen, Esq., 24901 Northwestern Highway, Ste. 311, Southfield, MI 48075, counsel to the DIP Lender and (iii) the United States Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph. This Order shall expire upon the earlier of the entry of a Final Order or three (3) Business Days after the Final Hearing Date (the "Expiration Date").

15. No Marshalling. The DIP Lender shall not be under any obligation to marshal any assets in favor of the Debtor or any other party or against or in payment of any or all of the Post-petition Indebtedness.

16. Effect of Failure of Final Order to be Entered. If a Final Order substantially identical to this Order is not entered or a Final Order substantially identical to the Interim Order entered contemporaneously herewith is not entered on or prior to the Expiration Date, all Post-

petition Indebtedness shall be immediately due and payable, the DIP Loan shall terminate and the DIP Loan Agreement shall terminate. The DIP Lender shall be entitled to the benefits of the DIP Loan Agreement for the period prior to the Expiration Date, but on and after the Expiration Date, the parties shall no longer be bound by the DIP Loan Agreement and the Debtor shall be free to seek the use of cash collateral or alternative post-petition financing from the Court.

17. <u>Objections Overruled or Withdrawn</u>. All objections to tile entry of this Order have been withdrawn or overruled.

18. <u>Controlling Effect</u>. To the extent any provisions in this Order or the Financing Agreement conflict with any provisions of the Financing Motion, the DIP Financing Agreement and the provisions of this Order shall control.

19. <u>Order Effective</u>. This Order shall be effective as of the date of signature by the Court.

**IT IS SO ORDERED.**

**Term Sheet for loan between Metals in Time, Inc. (the "Debtor"), a Debtor in Possession, and Georgio Conti, Inc. ("Lender"), a Michigan corporation.**

1. Loan amount. Lender agrees to make available a revolving loan in an amount not to exceed Four Hundred Fifty Thousand Dollars ($450,000.00) (the "Loan") at any time.

2. Term. The Loan shall become due and payable in full on the six-month anniversary of entry of the Order approving the Loan unless otherwise agreed by the parties and approved by the Bankruptcy Court (as defined herein).

3. Interest Rate. Any amount drawn on the Loan and outstanding shall bear interest at the rate of six percent (6%) per annum (the "Interest Rate"); and upon the event of a default by the Debtor and the expiration of any applicable cure period, the interest rate shall increase to nine-percent (9%) per annum (the "Default Interest Rate").

4. Payment Terms. Debtor shall pay to Lender all amounts drawn on the Loan on a monthly basis. Any amount unpaid shall bear interest at the Interest Rate or Default Interest Rate, as applicable.

5. Security. Debtor shall grant to Lender with an all asset security interest junior to First Place Bank and any other valid secured creditor on all prepetition collateral, and senior to all administrative and priority claims pursuant to sections 503(b) and 507 of title 11 of the United States Code (the "Bankruptcy Code").

6. Negative Covenants. Debtor shall not incur any secured indebtedness without the express written consent of the Lender until the Loan is fully and finally retired.

7. Condition Precedent.

   a. Entry of an order by the Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") approving the Loan and authorizing Debtor to enter into same.

   b. Confirmation by Borrower of the amount, validity and priority of all Lender's prepetition claims and security interests, if any.

   c. Entry of a final, signed writing memorialize the terms of the Loan, inclusive of all standard and customary terms of comparable debtor-in-possession financing agreements (the "Final Agreement").

8. Events of Default. The Loan shall become immediately due and payable in full on the occurrence of any one or more of the following events of default:

   a. Nonpayment of any installment of principal or of interest on the Loan for a period of ten days after it shall have become due and payable, whether at maturity, by notice of intention to prepay, or otherwise;

b.  Failure to observe or perform any term, covenant, or agreement contained in the Final Agreement for a period of ten days or more;

c.  Discovery that a representation or warranty made by the Debtor in the Final Agreement or in any certificate, report, or opinion delivered pursuant to the Final Agreement was incorrect in any material respect when made;